UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUANITA MORRIS O/B/O N.M.,      )
    Plaintiff,               )
                             )
        v.               )   Civil Action No. 1:11cv697
                             )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security,                       )
    Defendant.               )
                             )

<u>REPORT AND RECOMMENDATION</u>

Pursuant to 42 U.S.C. § 405(g), Juanita Morris, on behalf of N.M., a minor, ("plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("defendant") denying plaintiff's claim for social security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383.  Specifically, plaintiff brings this action to review the decision of the Commissioner of Social Security that plaintiff is not disabled and thus not entitled to SSI.  The record has been filed, and the case is now before the Court on cross-motions for summary judgment.

In her Motion for Summary Judgment, plaintiff contends the Administrative Law Judge's ("ALJ") decision should be reversed because the ALJ erroneously determined that plaintiff's impairment was not functionally equivalent to a listed impairment.  Alternatively, plaintiff requests that the Court

remand this matter to the defendant's agency pursuant to 42 U.S.C. § 405(g) for a new administrative hearing.  By contrast, defendant urges the Court to uphold the denial of plaintiff's application for SSI because substantial evidence exists in the record to support the ALJ's decision that plaintiff was not disabled within the meaning of the Act.

I.   <u>PROCEEEDINGS</u>

On April 14, 2008 plaintiff applied for SSI benefits due to a learning disability beginning on August 2, 1999. (Administrative Record ("R.") 141, 145.)  The state agency denied plaintiff's application upon initial review and then again upon reconsideration.  (<u>Id.</u> at 54-58, 60-62.)

On September 14, 2010, ALJ Eugene Bond held a hearing on plaintiff's application.  (<u>Id.</u> at 26-37.)  The ALJ issued a decision on September 24, 2010 finding that plaintiff was not disabled because she did "not have an impairment or combination of impairments that result[ed] in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning."  (<u>Id.</u> at 11-25.)  The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Pursuant to 42 U.S.C. § 405(g), plaintiff exhausted her administrative remedies.

On June 28, 2011, plaintiff filed the instant lawsuit in the Eastern District of Virginia to challenge the ALJ's

decision.  (Dkt. 1.)

## II.   FACTS OF RECORD

### A.   Plaintiff's Personal Background

Plaintiff was born on December 30, 1997 weighing four pounds, two ounces. (R. 17-18.) She experienced some complications at birth due to the umbilical cord being wrapped around her neck, which may have resulted in minor cerebral palsy and her current developmental delays.  (Id. at 18, 33, 387.)

When plaintiff became school age, her mother noticed that she had trouble paying attention and was easily distracted. (Id. at 18-19.)  She was enrolled in special education and at the time of the ALJ hearing was continuing her education in the seventh grade.  (Id.)  Despite her tendency to engage in inattentive and hyperactive behaviors, plaintiff has a happy demeanor and enjoys shopping and playing with friends.  (Id.) She resides with her parents and brother.  (Id. at 29.)

### B.   Plaintiff's Medical Background

Plaintiff complains of ADHD, learning disabilities, speech problems, and mild cerebral palsy.  The following is a summary of her medical history.[1]

---

[1] Although it is true that SSI benefits are not payable to plaintiff, if at all, until May 1, 2008, the ALJ considered plaintiff's complete medical record consistent with 20 C.F.R. § 416.912(d).  Therefore, this Court will consider that record in determining whether substantial evidence supports the ALJ's decision.

1.   *Dr. Sylvia Edelstein, MD*

In May 2008 plaintiff saw Dr. Sylvia Edelstein, a pediatric neurologist, for concerns about learning problems.  (Id. 314-18.)  Dr. Edelstein reviewed plaintiff's extensive medical records and interviewed plaintiff in the company of her parents. She noted plaintiff's history of developmental delay and apparent learning problems.  Although plaintiff used simple words for her age, she followed complex commands well.  (Id. at 315.)

2.   *Initial State Agency Disability Determination*

In June 2008, the state agency completed a Disability Determination Explanation Form as part of its initial review of plaintiff's claim for SSI.  (Id. at 41-51.)  The reviewers, which included a speech-language pathology consultant, a psychology consultant, and a disability examiner, found plaintiff to have an abnormal gait.  (Id. at 45-46.)  She had "difficulty processing and understanding concepts in all areas of performance," as well as speech intelligibility difficulties. (Id. at 46.)

The state agency reviewers concluded that plaintiff had two severe impairments: a learning disorder and speech and language delays.  (Id.)  They also found that plaintiff had a marked impairment in the domain of Attending and Completing Tasks. (Id. at 47.)  In so finding, they noted plaintiff's "impaired

4

attention" and "difficulty with multi step directions and completing tasks within a given time period." (Id.)  She had a less than marked impairment in the areas of Acquiring and Using Information, Interacting and Relating with Others, Moving About and Manipulating of Objects, and Caring for Yourself. (Id. at 47-48.)  They found her to have no limitations in the domain of Health and Physical Well-Being. (Id. at 48.)

The state agency ultimately found that plaintiff's impairments did not meet, medically equal, or functionally equal a listing. (Id. at 47, 49.)  In explaining the denial of SSI, the report stated that "[t]hough [plaintiff] has a learning disability she is able to engage in age appropriate activities as well as interact in a school setting." (Id. at 50.)

### 3.   *Second State Agency Review*

Nicole Sampson, Ph.D. evaluated plaintiff and completed a Childhood Disability Evaluation Form for the state agency in October 2008. (Id. at 378-83.)  Dr. Sampson found that plaintiff had a marked limitation in the area of Acquiring and Using Information, no limitations in the area of Health and Physical Well-Being, and less than marked limitations in the areas of Caring for Yourself, Moving About and Manipulating Objects, Interacting and Relating With Others, and Attending and Completing Tasks. (Id. at 380-81.)  Her ultimate opinion was that plaintiff had a severe impairment that did not meet the

listings.  (Id. at 378.)

Dr. Sampson's evaluation of plaintiff noted "[w]eaknesses …
in phonological processing [and] executive functioning."  (Id.
at 380.)  At the time of the evaluation, plaintiff had been
prescribed medication for ADHD but had not received a formal
diagnosis.  (Id. at 383.)  She was below average in most of her
school subjects and spent only 40% of her time in a general
education setting.  (Id.)  Plaintiff was showing some
improvement in class with a Focalin prescription, but
"require[d] structure in order to maintain academic skills."
(Id. at 383, 380.)

In connection with Dr. Sampson, state agency speech
language pathologist Patricia Peters evaluated plaintiff's file
in November 2008.  (Id. at 380-85.)  Like Dr. Sampson, Ms.
Peters found that plaintiff was not disabled because her
problems did not meet the severity of a listing.  (Id. at 385.)

Plaintiff spoke with a mild lateral lisp, but "[d]ue to the
strength of her language skills, speech intelligibility appeared
to be functional."  (Id. at 384.)  Her social skills appeared to
be adequate, and Ms. Peters felt that her conservative
treatments consisting of small group speech therapy sessions one
hour a week suggested only a mild problem.  (Id. at 380, 385.)

### 4.   Jorge Rodriguez, Ph.D.

Petitioner saw Jorge Rodriguez for an assessment of her

6

cognitive abilities in June 2009.  (Id. at 386-93.)  Dr. Rodriguez noted that while plaintiff's long-term memory seemed okay, she had difficulties with short-term memory.  (Id. at 387.)  Plaintiff read books for pleasure but was below grade level in reading and math.  (Id.)  She was very friendly, had friends, and was able to read social cues.  (Id.)  Her speech was grammatically and syntactically correct, and her thought processes were intact.  (Id. at 388.)

Dr. Rodriguez ultimately concluded that plaintiff had average verbal and nonverbal intelligence, but that her memory functions were below expectation.  (Id. at 391.)  "Otherwise, cognitively, [plaintiff] is performing within normal limits in the arcs of mechanical reasoning."  (Id.)  He recommended accommodations in the classroom setting and perhaps a home tutor.  (Id. at 391-92.)

### 5.   Dr. Tarannum M. Lateef

Plaintiff saw Dr. Tarannum Lateef, a pediatric neurologist, for a second neurological opinion in 2009 and 2010.  (Id. at 394-96, 409-17, 468-72.)  A 2009 MRI revealed a 4.55 mm rounded T2 hyperintense lesion within the medial cortex of plaintiff's right frontal lobe; a follow-up MRI showed that the lesion was stable.  (Id. at 409.)

After the 2009 visits, Dr. Lateef described plaintiff as a "healthy, well-nourished, well-groomed young girl in no apparent

7

distress" who had "significant encephalopathy consisting of fine motor issues, balance issues, speech and cognitive delays." (Id. at 409, 411.)  She recommended follow-up MRIs, a neuropsychologist report to identify appropriate education accommodations, and an appointment with a neurodevelopmental pediatrician.  (Id.)

After a 2010 visit, Dr. Lateef observed that plaintiff was "mentally delayed for age" and had trouble with reading and paying attention.  (Id. at 439.)  Plaintiff, though able to walk, was "clumsy in her gait."  (Id.)

### 6.   *Dr. Jacquelyn Calbert*

Dr. Jacquelyn Calbert first evaluated plaintiff in 2009. (Id. at 399-407.)  She described plaintiff as a "quite forgetful" child who frequently talked out of turn in class, missed the bus, turned in incomplete homework, and required parental reinforcement to complete basic hygiene tasks.  (Id. at 399, 403.)  She was sociable and was able to make friends at her new school.  (Id. at 403.)  In her impression of plaintiff, Dr. Calbert stated

> [She] is … an engaging preadolescent who presents with many
> signs and symptoms consistent with [ADHD], predominantly
> inattentive.  This is further complicated by neuromotor
> dysfunction, a speech and language disorder, academic
> inefficiency, some features of anxiety, visual motor delay
> and suspected weak auditory memory.... The child has thus
> far made developmental progress.  There is every reason to
> believe she will continue to make gains.

(Id. at 405.)  Dr. Calbert recommended an interdisciplinary approach to intervention including, inter alia, a trial of Adderall XR, classroom accommodations, testing modifications, speech therapy, and adult-supervised youth activities.  (Id. at 407.)

Dr. Calbert re-assessed plaintiff in August 2010.  By this time, she had successfully completed the sixth grade with marks ranging between A and C, and a high D in math.  (Id. at 468-69.) She was continuing her education in a self-contained classroom and attended speech therapy and math resource sessions.  (Id. at 470.)  She was independent in her self-care skills, although she needed some reminders to stay on track.  (Id.)

In the area of motor skills, plaintiff was able to ride a bike without training wheels and tightly tie her shoes.  (Id. at 469-70.)  She could run but had some difficulty doing so.  (Id. at 470.)  The earlier-recommended trial of Adderall resulted in headaches and a weak appetite, so Dr. Calbert recommended that plaintiff try Concerta.  (Id. at 471.)  She also suggested strategies for home and the classroom to help plaintiff stay focused and on task.  The strategies included extra time for writing, using eye contact when instructing plaintiff, seating plaintiff away from distractions, and reading out loud.  (Id.)

### C.   Plaintiff's Non-Medical Background

The record also contains evaluations by plaintiff's

teachers and other speech pathologists conducted both for the state agency's review and as part of a three-year reevaluation of plaintiff's academic needs.

1.    *Speech and Language Evaluations*

In March and April 2008, Tamara Mozingo, MS CCC-SLP evaluated plaintiff's speech and language abilities. (Id. at 370-76.) Ms. Mozingo found plaintiff to be "very pleasant, friendly, and cooperative." (Id. at 376.) "She initiated and engaged in conversation with overall adequate topic maintenance. During unstructured tasks, she occasionally required redirection to maintain topic." (Id. at 370.) Plaintiff's speech intelligibility was poor, but her vocabulary and global auditory processing ability were considered within functional limits. (Id. at 376.)

2.    *Educational Evaluations*

As part of the same review of plaintiff's academic needs, Amanda Davis, M.T., an educational diagnostician, completed an Educational Assessment for plaintiff in April 2008. (Id. at 297-308.) She found that plaintiff functioned at the following levels of academic achievement: low average for basic reading; low for math calculation; and very low for math reasoning and broad writing. (Id. at 301-02.) Ms. Davis remarked that plaintiff appeared focused during the testing, although she moved slowly. (Id. at 297-98, 300.)

Plaintiff's fourth grade teacher filled out a Teacher Questionnaire in June 2008.  (Id. at 183-90.)  She found that plaintiff had problems functioning in each listed domain.  The teacher specifically noted "a very serious problem" in several capacities, including the following: comprehending and doing math problems; applying problem solving skills in class discussions; focusing long enough to finish assigned activities; carrying out multi-step instructions; organizing school materials; completing class assignments; completing work accurately without careless mistakes; working without distracting self or others; and working at a reasonable pace. (Id. at 185-86.)

Plaintiff was unable to complete most tasks in the appropriate time frame despite assistance from educators and peers.  (Id. at 185.)  Plaintiff also needed constant reminders to remember basic tasks such as attending speech therapy or taking her medicine.  (Id. at 188.)  The teacher found that plaintiff exhibited more "mental endurance" while taking Focalin, but that she still had problems functioning appropriately.  (Id. at 189.)

Plaintiff was also evaluated by Krisha T. Parker, Ed.S., a school psychologist.  (Id. at 282-88.)  She found that plaintiff performed below expectation in the areas of processing speed, executive processes, and phonological awareness and memory.

11

(Id. at 285.)  Plaintiff's teachers also reported significant inattentive and hyperactive behaviors.  (Id.)

Plaintiff's 2010 Individualized Educational Program (IEP) Report, made while she was in the sixth grade, states that she had "progressed beautifully" in the areas of reading and reading comprehension but continued to struggle "a great deal" with math.  (Id. at 203.)  She still required assistance and corrections with work habits, showing only "inconsistent progress" in this area.  (Id.)  The evaluator anticipated that plaintiff would need extra assistance in the upcoming school year with using her locker and transitioning between classes. (Id.)

### D.  Hearing before the ALJ

Both plaintiff and plaintiff's mother testified at the ALJ hearing in September 2010.  Plaintiff testified that she lived with her parents and brother.  (Id. at 29.)  She attended science and math classes with only four students, but was in the general classroom setting for all other subjects.  (Id. at 30.) A "helper" assisted her with staying on task in the general classes.  (Id.)  During the summer, plaintiff watched television and read books.  (Id.)

Plaintiff's mother testified that plaintiff has trouble with focusing and staying on task.  (Id. at 32-33.)  In the upcoming school year, which had just begun at the time of the

hearing, plaintiff would have special assistance for all classes
except for "specials" such as home economics and shop.  (Id. at
34.)  Plaintiff had been prescribed Adderall but had yet to
begin taking it pending insurance approval.  (Id.)  She was
impulsive and had trouble paying attention.  (Id.)

Plaintiff's mother also testified that plaintiff's doctors
had diagnosed her with a mild form of cerebral palsy, which is
believed to be a result of the umbilical cord wrapped around
plaintiff's neck at birth.  (Id. at 33.)  Certain behaviors,
such as picking at her arms, rocking back and forth, and
obsessive washing of her hair are believed to be associated with
this condition.  (Id. at 35.)  In addition, plaintiff's
neurologist had recently detected a brain lesion, which at the
time was stable but required further monitoring.  (Id. at 33.)

### III. APPLICABLE LAW

A claimant under the age of eighteen is considered disabled
if that individual suffers from a medically determinable
physical or mental impairment which results in marked and severe
functional limitations, and is expected to result in death or
last for a continuous period of not less than twelve months.  42
U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner uses a three-step
process to evaluate the SSI claims of minors.  See 20 C.F.R. §
416.924.

At the first step, the ALJ must consider whether the

claimant has engaged in "substantial gainful activity" ("SGA").
Id. § 416.924(a).  If a claimant's work equals SGA and is more
than an unsuccessful work attempt, the analysis ends and the
claimant must be found "not disabled," regardless of any medical
condition.  Id. § 416.924(b).

If the claimant establishes that she did not engage in SGA,
the analysis proceeds to the second step in which the claimant
must prove that she has a severe impairment.  Id. § 416.924(c).
If a child suffers from a severe impairment or combination of
impairments, the ALJ must finally determine whether the child's
impairment medically equals, or functionally equals an
impairment listed in Part 404, Subpart P, Appendix 1.  Id. §
416.924(d).  In assessing the functional limitations caused by
the impairments, the ALJ examines the child's limitations in six
areas of development and functioning in order to determine
whether she has a "marked" limitation in two domains of
functioning, or an "extreme" limitation in one domain.  Id. §
416.926a(a).  The six relevant domains of functioning are:

    (1)  Acquiring and using information;

    (2)  Attending and completing tasks;

    (3)  Interacting and relating with others;

    (4)  Moving about and manipulating objects;

    (5)  Caring for yourself; and

14

(6)   Health and physical well-being.

Id. § 416.926a(b)(1).

## IV.   STANDARD OF REVIEW

This Court may not review defendant's decision de novo, but instead must determine whether defendant's decision is supported by substantial evidence in the record and whether defendant applied the correct law.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance.  Hays, 907 F.2d at 1456.

In reviewing for substantial evidence, the Court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ.   While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman, 829 F.2d at 517.  The correct law to be applied includes the Act, its implementing regulations, and controlling case law.  Id. at 517-18.  With this standard in mind, the Court next evaluates the ALJ's findings and decision.

## V.   ALJ'S FINDINGS AND DECISION

The ALJ made the following findings and decisions. Plaintiff was a school-age child at the filing of her application and was an adolescent at the date of the ALJ's decision.  (R. 17.)  She had not engaged in any substantial gainful activity since April 14, 2008, the application date. (Id.)  Pursuant to 20 C.F.R. § 416.924(c), plaintiff had the severe impairment of attention deficit hyperactivity disorder (ADHD).  (Id.)  However, this impairment did not meet or medically equal one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1.  (Id.)  Nor did plaintiff have an impairment or combination of impairments that functionally equaled the listings pursuant to 20 C.F.R. § 416.924(d) and 416.926a.  (Id.)  The ALJ found that plaintiff had a marked limitation in only one domain, Acquiring and Using Information. (Id. at 17, 20.)

Plaintiff was born on December 30, 1997, weighing 4 pounds and 2 ounces.  (Id. at 17-18.)  Plaintiff is alleged to have ADHD and cerebral palsy.  (Id. at 18.)  Because the cerebral palsy is alleged to be mild and does not significantly limit her functioning at school or home, the ALJ did not consider it in his analysis of plaintiff's claim.  (Id.)

Plaintiff's mother noted that, from a young age, plaintiff was easily distracted and hyperactive.  (Id. at 18-19.)  Despite

16

the ADHD, plaintiff was progressing through school "with a happy demeanor" and benefited from small class settings.  (Id. at 19.)  Considering the evidence before him, the ALJ concluded that "claimant's subjective complaints and alleged limitations are not fully persuasive and that she retains the capacity to function within our society and is not disabled."  (Id.)  In so finding, he specifically relied on the opinion evidence of state agency consultants Dr. Sampson and Ms. Peters.  (Id.)

## A.   Analysis

Plaintiff argues that, in denying her application for SSI, the ALJ "failed to address pertinent evidence, failed to provide adequate rationale for his decision, and failed to evaluate evidence which conflicted with his decision."  (Pl's Mot. Summ. J. at 10.)  In essence, she finds two specific faults with the ALJ's decision: (1) the ALJ's failure to resolve conflicts in the opinions of the state agency evaluators; and (2) the ALJ's failure to evaluate pertinent evidence concerning the Attending and Completing Tasks domain.  Due to these deficiencies, plaintiff argues that the ALJ's determination that her impairments do not functionally equal a listed impairment cannot be based on substantial evidence.  The Court will address each argument in turn.

### 1.   *The ALJ Did Not Properly Weigh Evidence from State Agency*

Plaintiff first argues that the ALJ failed to resolve

conflicts between the reports of Dr. Sampson, Ms. Peters, Ms. Vaughn, and Ms. Ellwood.  (Pl's Mot. Summ. J. 3-5.)  Plaintiff also argues that, in violation of Social Security Ruling 96-6p, the ALJ failed to consider the state agency's initial Disability Determination Explanation which found that plaintiff had a marked limitation in the Attending and Completing Tasks domain. For the reasons stated below, the undersigned recommends a finding that the ALJ erred as a matter of law when he failed to consider or explain his consideration of the initial Disability Determination Explanation.

a)    Report of Dr. Sampson and Ms. Peters

Plaintiff's first argument deals with purportedly conflicting statements in the state agency reports of Dr. Nicole Sampson and Ms. Patricia Peters.  Although Dr. Sampson and Ms. Peters ultimately found that plaintiff had a marked limitation in the area of Acquiring and Using Information, as the ALJ also concluded, plaintiff takes issue with a conflicting statement within Ms. Peters' report.  (Id. at 4.)  In form SSA-416, Ms. Peters states that "[plaintiff's] abilities to acquire and use information as presented do not appear to be limited to a marked or to an extreme degree."  (R. 384.)  In the Domain Evaluation, she clarifies that the domain of Acquiring and Using Information is "LESS THAN MARKED from a communication perspective."  (Id. at 380.)

18

Defendant correctly notes that, if in fact there was a conflict between the opinions of Dr. Sampson and Ms. Peters, the ALJ resolved it in plaintiff's favor.  The ALJ concurred with the state agency's ultimate finding that plaintiff had a marked limitation in the area of Acquiring and Using Information. Further, Ms. Peters' limited her opinion to "a communication perspective."  (<u>Id.</u> at 380.)  It is thus not clear that Ms. Peters' opinion was even intended to address plaintiff's general condition.

b)   <u>Initial Disability Determination Explanation</u>

Plaintiff also contests the ALJ's disregard of a June 2008 Disability Determination Explanation (DDE) that formed the basis of the initial denial of plaintiff's claim.  Although concluding that plaintiff was not disabled under the Act, the June 2008 DDE found that plaintiff had a marked limitation in the Attending and Completing Tasks domain.  (R. at 47.)  The ALJ, to the contrary, found that plaintiff's limitation in this domain was less than marked.  Because the ALJ did not evaluate or even mention the June 2008 DDE, plaintiff argues that his opinion defies review.

Social Security Ruling 96-6p requires ALJs to consider and evaluate the findings of fact and opinions of state agency medical and psychological consultants.  SSR 96-6p, 1996 WL 374180 *2 (S.S.A.).  "[ALJs] … are not bound by findings made by

19

State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Id. Reviewing courts have found that failure to articulate reasons for rejecting a state agency opinion is legal error even when the ALJ's decision is otherwise "very detailed and thorough." Levine v. Astrue, 2010 WL 2464907, *3 (D.S.C. 2010).

In his decision, the ALJ stated that he considered "all of the relevant evidence in the case record," which included "objective medical evidence and the relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements …; and any other relevant evidence in the case record." (R. 17-18.) He went on to note that he had specifically relied on the opinion evidence of Dr. Sampson and Ms. Peters, who performed the state agency's second evaluation of plaintiff's case in October and November 2008. (Id. at 18.) The ALJ assigned "significant probative weight" to their opinions because the evidence received after their assessments did not demonstrate any further limitations. (Id.)

The undersigned recommends a finding that that the ALJ erred when he failed to consider or explain the weight given to the June 2008 DDE. Although the ALJ was not required to follow the state agency's initial determination that plaintiff had a

20

marked limitation in the Attending and Completing Tasks domain, he did have a duty to explain the extent of his consideration of that decision or his reasons for rejecting it.  See Levine, 2010 WL 2464907 at *3.  Instead, he provided a forty-five word explanation that plaintiff's impairment was less than marked in that domain, without referencing any examining or treating source.  (Id. at 21.)

Defendant, in its Opposition to Plaintiff's Motion for Summary Judgment, misconstrues the requirement of SSR 96-6p by arguing that the state agency's initial determination is not subject to judicial review.  (Def's Opp. Pl's Mot. Summ. J. at 3-4.)  To the contrary, the undersigned is not attempting to review that decision or force the ALJ to adopt it.  Indeed, it is entirely possible that the ALJ is justified in his determination.  But because he must explain that determination under SSR 96-6p, his failure to do so is legal error.  See Levine, 2010 WL 246807 at *3.

## 2.   *The ALJ Failed to Properly Evaluate Evidence Regarding the Attending and Completing Tasks Domain*

Plaintiff next argues that the ALJ erred when he failed to evaluate evidence concerning the Attending and Completing Tasks domain.  Plaintiff specifically argues that the ALJ's three-sentence explanation does not address the relevant factors contained in the listing, nor does it address conflicting

evidence from the teacher evaluations and educational
assessments contained in the Record.  For the reasons stated
below, the undersigned agrees and recommends a finding that the
ALJ's decision does not provide a sufficient basis for this
Court's review.

In the Attending and Completing Tasks domain, defendant is
instructed to consider "how well you are able to focus and
maintain your attention, and how well you begin, carry through,
and finish your activities, including the pace at which you
perform activities and the ease with which you change them." 20
C.F.R. § 416.926a(h).  The benchmarks for school-age children
include the following: remembering and organizing school
materials; completing classroom work and homework; concentrating
on details; changing activities without distracting others;
reading by oneself; completing family chores; and completing
transition tasks such as catching the bus without extra
accommodations.  Id. § 416.926a(h)(2)(iv).  Adolescent children
should be able to pay attention to long presentations and
discussions, maintain concentration while reading textbooks,
independently plan and complete long-term projects, organize
materials to complete long-term projects, and not be unduly
districted by peers in a school or work setting.  Id. §
416.926a(h)(2)(v).

In determining a child claimant's severity in a given

domain, an ALJ is required to evaluate the "whole child."  SSR
09-1p, 2009 WL 396031 (S.S.A).  This decision is informed by a
variety of evidence.  See SSR 09-2p, 2009 WL 396032 (S.S.A.)
Aside from acceptable medical sources, such as pediatricians and
speech-language pathologists, the ALJ may consider other medical
sources, including nurse-practitioners, occupational therapists,
physical therapists, and psychiatric social workers.  Id. at *3.
Non-medical sources are also appropriate sources of information.
Id.

> Evidence from other sources who are not medical sources and
> who know and have contact with the child can also be very
> important to our understanding of the severity of a child's
> impairment(s) and how it affects day-to-day functioning.
> These sources include parents and caregivers, educational
> personnel …, public and private social welfare agency
> personnel, and others....  Therefore, we will consider
> evidence from such non-medical sources when we determine
> the severity of a child's impairment(s) and how the child
> typically functions compared to children of the same age
> who do not have impairments.

Id.  Early intervention and school programs are significant
sources of evidence that will be considered by defendant.  Id.
at *4-7.

The ALJ's explanation of plaintiff's less than marked
limitation in this domain was brief:

> The claimant has a history of ADHD, which has affected her
> ability on some level to attend to and complete tasks.  She
> currently attends special education classes in some
> subjects for additional guidance.  The small class setting
> has been helpful, according to claimant's mother.

(R. 21.)  Apart from vague references to "information from other

sources, such as school teachers" and plaintiff's placement in special education, the ALJ made no mention of the lengthy and thorough educational assessments contained in the Record.

It should be noted that an ALJ is not required to discuss each piece of evidence included in the record.  Indeed, "failure to cite specific evidence does not establish that the ALJ failed to consider it."  Phillips v. Barnhart, 91 Fed. App'x 775, 780 n.7 (3rd Cir. 2004).  On the other hand, part of this Court's review includes a determination that the ALJ analyzed all relevant evidence while sufficiently explaining his findings. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

> The courts … face a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence.  Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)(quoting Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)).

In the face of this balancing act, the undersigned recommends a finding that the ALJ's decision simply does not contain enough information for meaningful review.  The Record is replete with evidence from educational professionals voicing

serious concerns about plaintiff's ability to stay on task and
to function in a classroom setting.  (See, e.g., R. at 185.)
SSR 09-2p makes it clear that the reports and evaluations
created by plaintiff's teachers and school professionals are
precisely the type of assessment that defendant considers
informative in these cases.  If the ALJ had a legitimate reason
for disregarding these reports or assigning them little weight,
his decision does not explain it.  Indeed, his basis for
plaintiff's success in the small class setting is apparently
based on the testimony of plaintiff's mother.  Without a minimal
articulation of the consideration given to this significant body
of evidence, the undersigned recommends a finding that this
Court cannot determine whether substantial evidence exists to
support the ALJ's conclusion.

## VI.   RECOMMENDATION

For the reasons outlined above, the undersigned recommends
that both plaintiff's and defendant's Motions for Summary
Judgment be DENIED and that the case be REMANDED to the ALJ for
further development consistent with this decision.

## VII. NOTICE

The parties are advised that exceptions to this Report and
Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of
the Federal Rules of Civil Procedure, must be filed within
fourteen (14) days of its service.  Failure to object to this

25

Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

```
                              _____/s/_____
                              THERESA CARROLL BUCHANAN
                              UNITED STATES MAGISTRATE JUDGE
```

May 2, 2012
Alexandria, Virginia